■   MIDCOURT BUILDERS CORP., Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 39679.) — Judgment unanimously reversed on the law and facts and in the interest of justice and new trial granted, without costs of these appeals to either party. Memorandum: The decision of the trial court refusing an adjournment to give claimants additional time to serve the written notice as provided in section 16 of the Court of Claims Act set in motion a chain of events that mandate a new trial. Claimants' attorneys were derelict in failing to serve the notices at an earlier date. When deprived, however, of the use of their proposed lists of comparable sales and leases the court permitted the introduction of such proof as factual data over the strenuous objections of the State. The latter to be consistent declined to cross-examine the expert of claimants in this area of his testimony. Then to add to the confusion the trial court in its decision agreed with the State's position and stated that it was giving no weight to the objectionable testimony as "there was plenty of other evidence" as to the value of the appropriated lands. We disagree that such other proof may be found in the record. What remained was the testimony of two experts, one called by the State and the other by claimant. The testimony of each was entitled to little or no probative weight. The expert called by claimant testified about an appraisal his father had made some years before of a portion of the nonappropriated lands of

one claimant. The witness had made no other appraisal in the vicinity and frankly conceded that as to the town in which the lands were situate he did not know where it "begins or where it ends." This witness (or his father) to a limited degree utilized the Inwood Table hereinafter discussed. The State offered the court no assistance. Its sole expert testified that he used none of the recognized methods of valuing property as he found them to be inapplicable. The per acre value placed by him on the appropriated lands was one that he believed fair and reasonable under all the circumstances. Such opinion evidence is not only unsatisfactory but under the circumstances here present is not entitled to any weight. (Cf. *Yennock* v. *State of New York*, 23 A D 2d 809; *Wood* v. *State of New York*, 23 A D 2d 807; *Vircillo* v. *State of New York*, 24 A D 2d 534.) All of these errors and omissions to which all parties and the trial court contributed require a new trial. Inasmuch as such is necessary we advert briefly to the testimony of the remaining expert called by claimants. This witness in fixing a per acre value of the appropriated land made use of other lands owned by claimants upon which buildings had been constructed and leased to a third party for a term of 10 years with options to the tenant to renew for a total period of 30 years. The ultimate per acre value was computed by use of the so-called Inwood Table. Such use was erroneous upon the facts before the witness. The Inwood Premise contemplates recapturing invested capital *and* the return on the investment to be made in a series of annual payments over a designated term. (Friedman, Encyclopedia of Real Estate Appraising, p. 78.) It is most commonly used in determining the present worth of a leasehold or mortgage providing for periodic payments of principal and income over a specified term. (Casey, Real Estate Desk Book, p. T 42.) But here no leasehold had been appropriated but only raw land. On rare occasions the use of the Inwood Premise is proper in land appropriation cases. Thus, in the valuation of so-called wasting assets, such as unsold and unused cemetery property and timber upon lands having little or no value after removal at maturity of the crop of trees it may have limited use. (Cf. *Diocese of Buffalo* v. *State of New York*, 23 A D 2d 958.) The patent fallacy, however, of the use of the Inwood Premise in this case was that it contemplated recovery of the entire investment in the stated period whereas at the end of 30 years claimants would continue to posses the full value of land and buildings subject to an appropriate deduction for depreciation and obsolescence of the latter. The inapplicability of the table and the weird results produced by the use thereof can be best shown by a series of computations following the same method employed by claimants' expert. He employed a speculative interest rate of 6%. For each 1% the speculative interest rate is increased, however, the resulting computations decrease the land value by approximately $20,000 per acre. The use of a 9% rate would result in no value attributable to the land. Thus, in totality the record before us contains no proper proof from which the value of the appropriated lands might be determined. (Appeal by State of New York from judgment of Court of Claims for claimant in an action for damages for permanent appropriation of realty. Cross appeal by claimant from same judgment on ground of inadequacy.) Present — Williams, P. J., Bastow, Goldman and Henry, JJ.